NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| SAMUEL RIVERS, | : | |
| | : | |
| | : | Civil Action No.: 05-4868 (JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN E. POTTER, Postmaster General, | : | |
| United States Postal Service, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**LINARES**, District Judge.

This matter comes before the Court on Postmaster General John Potter's ("Defendant" or "USPS") motion for summary judgment. For the reasons set forth below, this Court grants Defendant's motion for summary judgment as to Plaintiff's claims of Title VII discrimination in its entirety, and as to Title VII retaliation on the claims for denial of overtime and improper surveillance. This Court, however, denies Defendant's motion for summary judgment as to Plaintiff's claims of Title VII retaliation for the letter of warning and the failure to discipline the threatening coworker.

## BACKGROUND

Plaintiff Samuel Rivers ("Plaintiff" or "Rivers") has been employed by the USPS since 1989 and began working at the South Orange Post Office on November 20, 1994. (Rivers Dec.

1

at 1; Def. Br. at 2.)  At the time of the events covered in Rivers's Complaint, he was supervised by Edwin Turner ("Turner") at the South Orange Post Office.  (Id.)  Prior to December, 2001, Rivers had made several Equal Employment Opportunity ("EEO") charges related to his employment at the South Orange Post Office.  (Comp. ¶ 15.)

In his current Complaint, Rivers alleges that he was discriminated and retaliated against by Turner from December, 2001 through April, 2002.  (Comp. ¶¶ 9-13, 17-21.)  Rivers bases his claims on a workplace confrontation that occurred on December 22, 2001, and the USPS's inadequate response; a letter of warning from Turner for returning late from work assignments; a denial of overtime; and a "campaign of surveillance" directed at him by USPS management.  (Id. at ¶¶ 9, 12-13, 17-18, 21.)

The workplace confrontation on December 22, 2001, was between Rivers and a coworker, Christopher Klotz ("Klotz").  (Sturman Dec. Ex. A at 2.)  Klotz requested that Rivers search the names on his route to discover the proper addressee of a piece of mail; Rivers responded with the correct procedure, and a heated exchange followed, in which Klotz allegedly requested a fight with Rivers after hours and made reference to Rivers's lawyer.  (Id.)  Turner, who was present, gave a lecture to the employees present on employee courtesy.  (Id.)  Rivers then met with Turner, and according to Rivers, Turner verified that a threat had occurred.  (Id. at 3.)  Jane Walsh ("Walsh"), Turner's supervisor, then entered the meeting and stated that nothing had happened, repeating that statement pointedly to Turner.  (Id.)

On April 3, 2002, Turner delivered to Rivers a letter of warning dated March 26, 2002, reprimanding him for working unapproved overtime on two occasions.  (Id.; Turner Dec. Ex. A at 1.)  Rivers disputes whether the reprimand in the letter was accurate.  (Sturman Dec. Ex. A at

2

3-4.)  The letter of warning was disputed by Rivers and later downgraded to an official

discussion.  (Pl. Opp. Br. at 2.)

On April 10, 2002, Turner told Rivers of an opportunity to work overtime, but removed

the "relay"—apparently a device required for a postal employee to use a postal vehicle—from the

vehicle in use by Rivers.  (Id. at 2.)  This removal constructively denied the overtime to Rivers,

as he was prevented from utilizing his own vehicle due to insurance issues.  (Id.)  Rivers alleges

that another employee, not in a protected class, receives assistance in performing his duties that

would have mitigated the denial of a relay to Rivers on April 10, 2002.  (Id. at 2-3.)

Finally, Rivers claims that he was improperly watched several times a week, sometimes

by inappropriate personnel.  (Id. at 3.)  This surveillance caused Rivers to cease requesting

overtime, damaging his earnings.  (Id.)

Rivers filed his administrative charge in this matter on March 23, 2002.  (Sturman Dec.

Ex. A at 1.)  He received his right to sue letter on July 13, 2005, and this action was filed on

October 11, 2005.  (Sturman Dec. Ex. D at 1.)

### DISCUSSION

The Complaint brings claims under 42 U.S.C. § 2000e-2 and -3 ("Title VII").  (Comp. ¶¶

6, 14.)  It contains claims for discrimination regarding the warning letter and the denial of

overtime, and claims for retaliation regarding the warning letter, the denial of overtime, the

coworker threat response, and workplace surveillance.  (Comp. ¶¶ 9-13, 14-21; Pl. Opp. Br. at 6;

Def. Reply Br. at 1.)

The instant motion for summary judgment was filed by Defendant on May 2, 2007.  It

seeks dismissal of all counts in Rivers's complaint.  (Def. Br. at 1-2; Def. Reply Br. at 2-4.)

3

Defendant argues that it is entitled to summary judgment due to Plaintiff's failure to establish a prima facie case for each count or for failure to present evidence of pretext.  (Id.)

## A.     Legal Standards on the Motion for Summary Judgment

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial.  Id. at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings.  See Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  In employment discrimination cases, caution must be used by the trial court in granting summary judgment.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d Cir. 2000) (warning that intent may be problematic at summary judgment stage in Title VII case) (citing Gallo v.

4

Prudential Residential Serv. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)); Marzano v.

Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir. 1996) (discussing underlying reasons why

summary judgment is often inappropriate in employment discrimination cases).

### 1. Title VII Discrimination

Under McDonnell Douglas v. Green, a plaintiff making a federal employment

discrimination claim under Title VII bears the burden of showing by a preponderance of the

evidence that: 1) he is a member of a protected class, 2) he was subject to an adverse

employment action, and 3) the circumstances of the matter give rise to an inference of

discrimination.[1]  411 U.S. 792, 802 (1973); Jones v. School Dist. of Philadelphia, 198 F.3d 403,

410-12 (3d Cir. 1999).  After such a showing, a plaintiff is said to have made a prima facie case

of discrimination and the burden shifts to the defendant, who must demonstrate that a legitimate,

nondiscriminatory reason existed for the action taken.  McDonnell Douglas, 411 U.S. at 802.

Once the defendant has met that burden, the plaintiff bears the burden in demonstrating that the

legitimate, nondiscriminatory reason given is a pretext for discrimination.  Jones, 198 F.3d at

410.

The Third Circuit has described an adverse employment action outside the retaliation

context as something "serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment."  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d

---

[1]Both parties agree as to the elements of a prima facie case of discrimination applicable in this case.  Sarullo v. United States Postal Service, 352 F.3d 789, 800 (3d Cir. 2003).  Neither party argues that Rivers was not qualified for his position with the USPS, and as the elements of a prima facie case of Title VII discrimination depend, in part, on the factual context of each case, the Court will not impose—at this stage—an additional element pertaining to Rivers's qualifications as a letter carrier if the parties do not contest the issue.  Sarullo, 352 F.3d at 798.

Cir. 2006) (retaining "serious and tangible" standard outside retaliation context).  A plaintiff may

demonstrate the circumstantial inference of discrimination in numerous ways, but must deploy

"evidence adequate to create an inference that an employment decision was based on an illegal

discriminatory criterion."  Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 356 (3d Cir. 1999)

(quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)).  "The

central focus of the prima facie case is always whether the employer is treating some people less

favorably than others because of their race, color, religion, sex, or national origin."  Sarullo v.

United States Postal Service, 352 F.3d 789, 798 (3d Cir. 2003) (quoting Pivirotto, 191 F.3d at

352) (internal quotation marks omitted).

### 2.        Title VIII Retaliation

In order to establish a prima facie case for retaliation under Title VII, a plaintiff must

demonstrate that "(1) he was engaged in protected activity; (2) he was [subject to an adverse job

action] subsequent to or contemporaneously with such activity; and (3) there is a causal link

between the protected activity and the [subsequent adverse job action]."  Sarullo v. United States

Postal Service, 352 F.3d 789, 800 ( 3d Cir. 2003) (quoting Woodson v. Scott Paper Co., 109 F.3d

913, 920 (3d Cir.1997)).  The subsequent burden-shifting approach is identical to that of a Title

VII discrimination case.  Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006).

In a retaliation claim, the Supreme Court has defined an adverse employment action as

something "materially adverse" to employment, meaning that "it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  Burlington Northern

and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006); Moore, 461 F.3d at 341.  The

action must, however, have amounted to more than mere "petty slights, minor annoyances, and simple lack of good manners." Burlington Northern, 126 S.Ct. at 2415.  On a motion for summary judgment, the scope of the inquiry concerning the causal link between the protected activity and the materially adverse action is broad, and may consist of temporal proximity, "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 -233 (3d Cir. 2007).

### 3. Exhaustion

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).   Generally, in employment discrimination claims, a plaintiff must first file an administrative charge containing any allegations and complete the administrative process prior to filing suit. See, e.g., Atkinson v. LaFayette Coll., 460 F.3d 447, 453 (3d Cir. 2006); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984).  "The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Waiters, 729 F.2d at 237.

In this Circuit, failure to exhaust administrative remedies in a Title VII employment discrimination claim is an affirmative defense, however, it does not serve as a jurisdictional bar to a plaintiff's suit.  Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (discussing Title VII

jurisprudence in interpreting Rehabilitation Act); Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).  The burden is on the defendant to plead and prove exhaustion under Title VII. Williams, 130 F.3d at 573.

**B.     Race Discrimination**

The USPS argues that summary judgment is appropriate in Rivers's case because he fails to present a prima facie case for discrimination under McDonnell Douglas Corp. v. Green.  411 U.S. 792, 802 (1973).  Specifically, the USPS urges that there was no adverse employment action or circumstances giving rise to a reasonable inference of discrimination against Rivers when the letter of warning was issued to him or when he was denied overtime.  (Def. Br. at 10.)

**1.     Warning Letter**

At the outset, the USPS and Rivers appear to agree that the warning letter was not completely withdrawn from his personnel record, but "downgraded" to a lesser reprimand.  (Pl. Opp. Br. at 12; Def. Reply Br. at 2.)  The USPS refers to the altered letter as a "discussion," and Rivers contends in his affidavit that the letter was changed to an "official discussion."[2]  (Id.) Both parties continue to disagree as to whether the issuance of a warning letter later downgraded to an official discussion amounts to an adverse action or whether the circumstances in Rivers's case give rise to an inference of discrimination with respect to the letter.  (Pl. Opp. Br. at 12-13; Def. Reply Br. at 2.)

---

[2]As this Court must take the facts in the light most favorable to Rivers on this motion, it will refer to the lesser reprimand as an "official discussion" in this Opinion.  Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

Precedential authority in this Circuit exists to support the proposition that a reprimand must have definite consequences for an employee's working conditions to constitute an adverse action under Title VII.  In Weston v. Pennsylvania,[3] the Third Circuit found that temporary letters of reprimand placed in an employee's file did not satisfy the adverse employment action requirement:

> Weston's own deposition testimony indicates that he was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location in the prison, did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands. Additionally, the reprimands were of a temporary nature. Because they were not permanently affixed to Weston's employment file, we cannot see how they changed or altered his employment status in any way. Moreover, Weston suffered no reduction in pay, reassignment, firing, or any similar employment action.

251 F.3d 420, 431 (3d Cir. 2001) (utilizing discrimination standard for adverse action in retaliation claim).  While the situation in Rivers's case is clearly different from that in Weston, because Rivers's warning letter survives in some form as an official discussion in his personnel record, the official discussion does not appear to have resulted in the kind of employment action that would affect Rivers's compensation or other terms, conditions, or privileges of employment. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006); Jones v. School District of Philadelphia, 198 F.3d 403, 411-12 (3d Cir. 1999).

---

[3]Prior to the Supreme Court's decision in Burlington Northern, retaliation and discrimination claims under Title VII employed the same standard to determine whether an employment action was adverse for establishing a prima facie case.  126 S.Ct. 2405, 2410 (2006).  This Court finds, therefore, that cases prior to Burlington Northern discussing retaliation are instructive in addressing some of the issues presented in Rivers's case.

The only claim Rivers makes to support the contention that the official discussion constitutes an adverse action is that the official discussion could result in the issue of a future letter of warning.  (Pl. Opp. Br. at 12.)  To support this contention, Rivers points to nothing more than the assertion in his Opposition Brief and the statement in his affidavit.  (Id.; Rivers Dec. at 5.)  Assuming arguendo that Rivers could testify at trial on this issue without any regulatory or contractual support, the potential adverse employment consequences issuing from the official discussion appear to be too attenuated and remote to satisfy the "serious and tangible" employment effect required for the adverse action element in a Title VII discrimination claim. Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).  The official discussion does not amount to, nor does it appear from Rivers's brief to be tantamount to, a reduction in status, demotion, loss in wages or benefits, or change in work schedule.  Weston, 251 F.3d at 431. Rivers admits that a "future alleged infraction" would be necessary to cause the official discussion to blossom into a warning letter.  (Pl. Opp. Br. at 12.)  Consonant with the holding in Weston, therefore, this Court finds that the official discussion would not constitute an adverse employment action as required in a prima facie case of race discrimination under Title VII.  251 F.3d at 431; Storey v. Burns Intern. Sec. Serv., 390 F.3d 760, 764 (3d Cir. 2004).  Rivers's claim for race discrimination with respect to the warning letter, therefore, is dismissed.

### 2.    Denial of Overtime

With respect to Rivers's claim of discrimination for the denial of overtime, the USPS moves for summary judgment on the basis that the denial of overtime on April 10, 2002, did not constitute an adverse action and did not give rise to an inference of discrimination.  (Def. Br. at 16.)  The USPS limits its arguments to the overtime on April 10, 2002, as it also contends that

Rivers is limited by the doctrine of exhaustion in claiming discrimination for any other dates that he was denied overtime. (Id.)

In general, a plaintiff must administratively exhaust Title VII claims prior to filing suit. Atkinson v. LaFayette Coll., 460 F.3d 447, 453 (3d Cir. 2006). Exhaustion is an affirmative defense that limits a plaintiff to bringing claims that were contained in the administrative charge or were fairly within the scope of the ensuing administrative investigation. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Rivers filed an EEO charge, No. 4A-070-0077-02, in the current matter on May 23, 2002. (Sturman Dec. Ex. A at 7, Ex. B at 26.) The charge contained three items, the last of which alleged that on April 10, 2002, Turner denied Rivers an overtime assignment. (Sturman Dec. Ex. A at 10.) Rivers's EEO charge contained no allegation that overtime had been denied on other dates, or that a systematic deprival of overtime to Rivers was occurring at the South Orange Post Office. (Sturman Dec. Ex. A at 6-10.)

While claims not contained in an EEO charge may be brought in a subsequent civil suit if those claims are fairly within the scope of the administrative inquiry, the rule is not infinitely generous. Atkinson, 460 F.3d at 453. In Atkinson v. Lafayette College, the Third Circuit ruled that when an EEO charge's stated facts limit a claim, a plaintiff may be limited to the exhausted facts in bringing a Title VII claim in court:

> Atkinson's Title VII retaliation claims were properly dismissed by the District Court because the allegations in her complaint did not fall "fairly within the scope of the . . . EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.1996). The criticisms made by Atkinson pertained only to the treatment of coaches of women's sports, as opposed to the treatment of coaches who were women. As such, Atkinson's retaliation claim is more properly characterized as a claim

11

> predicated on activities in support of Title IX, rather than a claim
> predicated on activities protected under Title VII.

460 F.3d at 453.  In the case at bar, Rivers limited the scope of his EEO investigation to the denial of overtime on April 10, 2002.  (Struman Dec. Ex. A at 10.)  As in <u>Atkinson</u>, the scope given to his claim is limited by the exhaustion doctrine: given the specificity of Rivers's allegation, an overall examination of overtime practices pertaining to Rivers was beyond the scope of the EEO investigation.  Rivers's claim of discrimination for denial of overtime, therefore, is limited to the denial of overtime of April 10, 2002.

As Rivers's discrimination claim based on the denial of overtime is limited to the alleged denial on April 10, 2002, the issue before the Court becomes whether the denial of overtime on a single day can provide Rivers with a sufficiently adverse action to form a prima facie case and whether or not the single denial of overtime sufficed to create an inference of discrimination by the USPS against Rivers.

Defendant provides no support for its argument that a single denial of overtime did not impact the "terms and conditions" of Rivers's employment sufficiently to be an adverse action.  (Def. Br. at 17.)  Other courts, however,  have found that denial of overtime may constitute an adverse action under Title VII: "[l]ack of overtime opportunities . . . is a form of reduction in compensation."  <u>Albright v. City of Philadelphia</u>, 399 F. Supp 2d 575, 587-88 (E.D.Pa., Oct. 28, 2005); <u>Whitmire v. Kvaerner Philadelphia Shipyard, Inc.</u>, 2007 WL 1866773, at *3 (E.D.Pa. June 27, 2007) (substantial loss of overtime opportunities an adverse action); <u>Mihalko v. Potter</u>, 2003 WL 23319594, at *5-6 (W.D.Pa. Dec. 12, 2003) (systematic denial of overtime an adverse action).  Not every claim of overtime denial, however, makes out a prima facie case under Title

12

VII.  Boykins v. Lucent Technologies, Inc., 78 F. Supp 2d 402, 416 (E.D.Pa. Jan. 10, 2000) (no

adverse action when facts disclosed that plaintiff received more overtime during alleged

retaliation).

Courts have found that some conduct may be too isolated and insubstantial to satisfy the

terms, conditions, or privileges requirement.  Shaner v. Synthes, 204 F.3d 494, 506 (3d Cir.

2000) (a change of office and "four or five" workplace pranks of raising the office temperature

not an adverse action); Witcher v. Sodhexo, Inc., 2007 WL 2510600, at *2 (3d Cir. Sept. 6,

2007) (unreported) (analogizing from hostile work environment standards in deciding that two

casual comments were too isolated to form an adverse action for age discrimination).  Courts in

other circuits have applied tests that question whether a single instance of overtime denial could

qualify as an adverse action.  Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir.

2000) ("de minimis employment actions are not materially adverse and, thus, not actionable" in

case involving temporary loss of collateral duty); Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th

Cir. 1996) (holding that discretionary denial of $600 bonus not materially adverse action); Embry

v. Callahan Eye Found. Hosp., 147 F.App'x 819, 829 (11th Cir. Aug. 23, 2005) (unreported)

(finding that loss of single day's compensation de minimus and not adverse action).

Viewing the facts surrounding the Rivers's failure to get overtime on April 10, 2002, in

the light most favorable to Rivers, this Court cannot say that Rivers suffered a sufficiently

adverse action to permit him to submit his discrimination claim to a jury.  Because Rivers's

claim cannot comprehend a systematic disallowance of overtime, as in Albright or Whitmire, and

because the denial was a single instance, Rivers has not suffered an adverse employment action

that impacts the terms, conditions, or privileges of employment sufficiently to sustain a prima

facie case for discrimination under Title VII.  <u>Shaner</u>, 204 F.3d at 506; <u>Albright</u>, 399 F. Supp 2d at 587-88; <u>Whitmire</u>, 2007 WL 1866773, at *3.

### 3.    Overall Effect of Circumstances in Determining Adverse Action

In accordance with <u>Shaner v. Synthes</u>, this Court will examine Rivers's concrete claims of the acts predicating discrimination individually, but remain mindful that he may satisfy the adverse act requirement with the combined effect of various acts that would be insufficiently adverse taken alone.  204 F.3d at 503 n.9.  The two circumstances Rivers points to as the adverse actions on which his discrimination claims depend are the letter of warning and the April 10, 2002, denial of overtime.

As discussed <u>supra</u>, neither of the two actions Rivers alleges would suffice individually to form an adverse action impacting the terms, conditions, or privileges of his employment with the USPS.  <u>Id.</u> at 506.  Both events, even taken in the light most favorable to Rivers, have either too small or too attenuated an impact on his employment when aggregated to be legally adverse actions for discrimination under Title VII. This Court finds that even taken together, the loss of overtime on a single day combined with the speculative impact that an official discussion would have in Rivers's career with the Postal Service does not suffice to form an adverse employment action under the Title VII discrimination standard for a prima facie case.  <u>Moore</u>, 461 F.3d at 341.

### C.    Retaliation

Rivers and the USPS disagree over whether Rivers can establish a prima facie case of retaliation with regard to the letter of warning, the denial of overtime, the threat by the coworker,

14

and workplace surveillance.  Pl. Opp. Br. at 10-11; Def. Br. at 10.  The USPS does not argue,

however, that Rivers was not engaged in protected activity.  Def Br. at 7.  Instead, it limits its

arguments to whether Rivers was subject to a materially adverse employment action, the lack of a

possible inference of retaliatory motive, whether there was a causal connection between his prior

protected activity and the adverse actions, and in one case, a legitimate nonretaliatory business

motive without any showing of pretext.[4]  Burlington Northern and Santa Fe Ry. Co. v. White,

126 S.Ct. 2405, 2415 (2006); Sarullo v. United States Postal Service, 352 F.3d 789, 800 (3d Cir.

2003).

        Common to all of Rivers's claims of retaliation, however, is his need to establish that his

prior protected conduct caused the alleged retaliatory action of the USPS.  Moore v. City of

Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006); Pl. Opp. Br. at 11.  Plaintiff appears to

concede in his brief that the substantial gap between his prior EEO charges and the claims in this

case precludes an inference of causation by temporal proximity.  Pl. Opp. Br. at 11.  Even were

Rivers not to concede the issue, the Third Circuit has recently stated: "[a]lthough there is no

bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three

---

        [4]In its reply brief, the USPS appears to expand its arguments on summary judgment to
include that Rivers has not presented evidence that the USPS's legitimate, nondiscriminatory
rationales were pretextual.  (Def. Reply Br. at 3.)  In fairness to Rivers, this Court notes that no
such arguments were presented in the USPS's initial motion brief, except with regard to the
retaliation claim based on the failure of the USPS to discipline Klotz.  (Def. Br. at 10, 17, 22,
n.5.)  Without a fair opportunity to respond to these arguments to his other claims, Rivers would
be placed in essentially the same situation as if this Court decided, sua sponte, to dismiss his
claims via summary judgment.  DL Res., Inc. v. FirstEnergy Solutions Corp., — F.3d —, 2007
WL 2993114, *11 (3d Cir. 2007) (awaiting pagination in F.3d).  This Court, therefore, refuses to
permit the USPS to present additional grounds for summary judgment in its reply brief.

months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 233 (3d Cir. 2007). Here, where the gap between the protected activity and the first alleged retaliatory act was at least thirteen months,[5] this Court cannot say that temporal proximity suffices to show causation.

In lieu of temporal proximity, however, a plaintiff can demonstrate a pattern of antagonism to show causation in Title VII retaliation. <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 432 (3d Cir. 2001). Rivers claims that the numerous events occurring between December 2001 and April 2002 constituted the requisite pattern of antagonism to show causation. <u>Weston</u>, 251 at 432; Pl. Opp. Br. at 11.

This Court agrees with Rivers that the number of events occurring within the span of time in which his claims arose is most likely sufficient to supply a pattern of antagonism. While the Third Circuit did note in <u>Weston</u> that "discrete responses to particular occurrences" would not create the necessary pattern of antagonism, Rivers has placed into controversy several facts that could create an inference, if credited by a finder of fact, of a pattern of antagonism. In particular, his account of the alleged statements of Walsh in aftermath of his altercation with Klotz and the downgraded letter of warning, in combination with this Circuit's jurisprudence on the danger of

---

[5]The last activity in the record with regard to Rivers's prior EEO charges is a letter dated November 8, 2000, related to the accidental covering over of a notice of final action posted at the South Orange post office regarding Rivers's EEO charge No. 4A-070-0161-97. (Sturman Dec. Ex. A at 8.) Given that Rivers's administrative complaint over the covering over of the notice was his last protected activity in the record prior to the events concerning his current charge, a period of thirteen (13) months elapsed between the issuance of November 8, 2000, letter and the December 22, 2001, confrontation with Klotz.

too quickly dismissing employment discrimination claims on summary judgment, combined, cause this Court to determine that Rivers has demonstrated sufficient causation to survive summary judgment on his retaliation claims.  Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir. 1996); Pl. Opp. Br. at 4; Rivers Dec. at 2-3.

### 1.     Letter of Warning

In its motion for summary judgment, the USPS alleges that Rivers fails to establish a prima facie case of retaliation based on the letter of warning because 1) it was not materially adverse and 2) there is insufficient temporal proximity to permit a showing of causation.  (Def. Reply Br. at 2-3.)  In contrast to this Court's analysis of the discrimination claim regarding the letter of warning, in a retaliation claim Rivers need only demonstrate that the issuance of the letter or the official discussion remaining on his record was "materially adverse" to a reasonable person.  Burlington Northern, 126 S.Ct. at 2415.  In other words, if the action taken by the USPS would tend to dissuade a reasonable employee from engaging in future protected action, it would suffice to form the adverse action requirement of Rivers's prima facie case of retaliation against the USPS.  Id.

Here, both the temporary issuance of a letter of warning, and the later reduction of the letter to an official discussion comprise actions that would cause an employee to reconsider bringing an EEO charge.  Id.  If, as contended by Rivers, the USPS employs a progressive disciplinary policy in which a previous infraction raises the penalty for a subsequent infraction, an employee could well choose not to engage to report discrimination if that might result in a letter of warning appearing in a personnel file even temporarily.  Id.; Pl. Opp. Br. at 10 n.2.  The letter of warning, therefore, constitutes the kind of materially adverse employment action that

17

could support a retaliation claim under Title VII.  As the USPS challenged this portion of

Rivers's retaliation claim based upon the lack of an adverse action and the absence of a means of

causation, and this Court has found that the USPS failed to meet its burden on summary

judgment on both issues, this Court denies the USPS's motion with regard to the Title VII

retaliation claim based on the letter of warning.

### 2.    Denial of Overtime

Rivers's claim of retaliation based on his April 10, 2002, denial of overtime is challenged

by the USPS on the same grounds, lack of adverse action and absence of causation, as his claim

for the letter of warning.  Def. Reply Br. at 3-4.  Despite the lower burden Rivers has to meet

with regard to the standard for an adverse action in a retaliation claim, this Court finds that

Rivers does not succeed in defeating the USPS's motion for summary judgment with regard to

retaliation based on his denial of overtime.

While the denial of overtime on a single day does not have the kind of impact on the

terms and conditions of employment required for a claim of Title VII racial discrimination, the

Supreme Court's decision in Burlington Northern has changed the calculus of what constitutes an

adverse action for Title VII retaliation.  Here, Rivers did not suffer from the "petty slights or

minor annoyances that often take place at work and that all employees experience."  Burlington

Northern, 126 S.Ct. at 2415.  He alleges that he suffered an actual, albeit small, loss in income,

limited in this claim to the single day exhausted in his administrative charge.  This Court

recognizes that the "anti-retaliation provision protects an individual not from all retaliation, but

from retaliation that produces an injury or harm," and that the loss of a small amount of overtime

pay on a single occasion most likely does not arise to level of an "injury or harm."  Burlington

Northern, 126 S.Ct. at 2414.  Notably, the Seventh Circuit has held that loss of a discretionary bonus of $600 does not constitute a materially adverse action.  Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir. 1996) (describing effect of lower performance rating on employee in retaliation context).  As the Supreme Court has stated, in formulating its adverse action standard in Title VII retaliation, that "[w]e agree with the formulation set forth by the Seventh and the District of Columbia Circuits," this Court finds Rabinovitz persuasive in this context.  Burlington Northern, 126 S.Ct. at 2415.  Analogizing from the analysis in Rabinovitz, the denial of a single day's overtime would most likely not qualify as materially adverse under the Burlington Northern Title VII retaliation standard for a prima facie case.  This Court, therefore, grants the USPS's motion for summary judgment on the portion of Rivers's retaliation claim predicated on the denial of overtime.

### 3.      Threat by Klotz

The USPS further challenges Rivers's claim of retaliation by the USPS for failure to discipline a threatening coworker as not materially adverse, incapable of providing a reasonable inference of discrimination, and that Rivers has not demonstrated pretext sufficiently to survive summary judgment.  (Def. Br. at 17-22.)  This Court finds that the USPS does not prevail in defeating this claim by Rivers in its motion for summary judgment.

As in the letter of warning, Rivers here alleges an action by management that would be materially adverse to his employment when the facts are examined in the light most favorable to him.  Burlington Northern, 126 S.Ct. at 2415; Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  Rivers claims that management declined to discipline an employee threatening him with physical violence in the workplace.  (Pl. Opp. Br. at 10.)  Even more so

than in the case of the letter of warning, the toleration of threats in the workplace is something that might cause a reasonable employee to refrain from additional protected activity.  Burlington Northern, 126 S.Ct. at 2415.

The USPS also challenges Rivers's case beyond the prima facie context.  Following Rivers's prima facie case, the USPS would have to demonstrate a legitimate, nonretaliatory reason for not disciplining Klotz.   Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007).  The burden would then shift to Rivers to show that the USPS's claimed reason was pretextual.  Marra, 497 F.3d at 300.  The USPS claims that it did not discipline Klotz because it lacked sufficient evidence to support Rivers's version of the confrontation, and responded instead with an investigation and a lecture to employees on workplace safety.  (Def. Br. at 21-22.)  The USPS conducted two investigations of the December 22, 2001, confrontation between Rivers and Klotz.  (Turner Dec. at 3.)  The second was initiated after Rivers personally complained about the event to higher USPS authorities.  (Rivers Dec. at 3.)  According to the USPS, the investigations yielded insufficient evidence that the threat to Rivers took place to discipline Klotz.  (Turner Dec. at 3; Sturman Dec. Ex. C at 46-49.)  In support of this finding, the USPS proffers the affidavit of Turner and the January 17, 2002, report by Leonard Jablonski (the "Jablonski report") concerning the incident.  (Id.)  The Jablonski report contains interviews with nine individuals identified by Rivers as having knowledge of the incident, and discloses no individual other than Rivers who claims that Klotz threatened Rivers.  (Sturman Dec. Ex. C at 46-49.)  While these proffers do not conclusively demonstrate that the USPS had a legitimate, nonretaliatory purpose in failing to discipline Klotz, they suffice to show that the USPS could show by a perponderance that its failure to discipline Klotz was legitimate and nonretaliatory.

20

"Pretext may be shown by exposing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Marra, 497 F.3d at 306 (internal quotations omitted).  Rivers rebuts the USPS's evidence of the legitimate, nondiscriminatory rationale for not disciplining Klotz primarily with an account of his post-confrontation contact with management, alleging that Walsh denied a threat had taken place and told Turner, her subordinate, that nothing had taken place.  (Rivers Dec. at 2-3.)  If Rivers's version of events was considered credible by a finder of fact, Walsh's reluctance to admit that a threat had taken place could constitute a sufficient contradiction to the USPS's contention that an adequate investigation took place in order to establish pretext.   Marra, 497 F.3d at 306.

Taking the facts in the light most favorable to Rivers, he has demonstrated a materially adverse action on the part of the USPS, an inference of causation, and evidence that is capable of demonstrating pretext in his claim or retaliation for failure to discipline Klotz.  This Court, therefore, denies the USPS's motion for summary judgment as to this portion of Rivers's Title VII retaliation claim.

### 4.    Surveillance by the USPS

As to his claim of retaliation by surveillance by USPS management, Rivers concedes that he failed to exhaust this claim in his EEO charge.  (Pl. Opp. Br. at 6 n.2.)  This Court, therefore, dismisses Rivers's claim of retaliation under Title VII for improper surveillance for failure to administratively exhaust that claim.  Atkinson v. LaFayette Coll., 460 F.3d 447, 453 (3d Cir. 2006).

**CONCLUSION**

For the forgoing reasons, this Court grants Defendant's motion for summary judgment as to Plaintiff's claims of Title VII discrimination in its entirety, and as to Title VII retaliation on the claims for denial of overtime and improper surveillance.  This Court, however, denies Defendant's motion for summary judgment as to Plaintiff's claims of Title VII retaliation for the letter of warning and the failure to discipline the threatening coworker.  An appropriate Order accompanies this Opinion.


DATED: December 11, 2007                             /s/ Jose L. Linares
                                                     United States District Judge